UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| DENIA HEDGE, MELISSA McCLARY, and DUSTIN TURLEY, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TOYOTA MOTOR MANUFACTURING, INDIANA, INC., and AEROTEK, INC.,<br><br>Defendants. | **CLASS ACTION COMPLAINT**<br><br>**FLSA COLLECTIVE ACTION COMPLAINT UNDER 29 USC § 216(b)**<br><br>CASE NO. 3:18-CV-00246-RLY-MPB |

## *JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND FLSA COLLECTIVE ACTION SETTLEMENT*

### I. INTRODUCTION

This joint motion seeks preliminary approval of the Settlement Agreement between Plaintiffs Denia Hedge ("Hedge"), Melissa McClary ("McClary"), and Dustin Turley ("Turley") (collectively, "Plaintiffs") and Defendants Toyota Motor Manufacturing Indiana, Inc. ("TMMI") and Aerotek, Inc. ("Aerotek") (collectively, "Defendants").

The Settlement resolves wage and hour claims brought against Defendants on behalf of a Settlement Class consisting of the three classes proposed in Plaintiffs' Second Amended Complaint. Specifically, the Settlement Class includes all non-exempt persons employed by or assigned to work at TMMI in any group other than Paint Shops from December 19, 2015 through the date on which the Court grants preliminary approval (the "Covered Period"). TMMI denied and continues to deny any liability to Plaintiffs or the proposed Settlement Class and maintains

that it complies with all applicable laws. However, TMMI agreed to settle the Action in accordance with the terms of the Settlement Agreement to avoid the costs of litigation. This early resolution avoids the substantial time and costs of litigation, provides finality and certainty as to disputed claims, and is the result of substantial arm's-length negotiations.

Because the Settlement is fair and reasonable and was reached negotiated at arm's-length under the supervision of an experienced wage-and-hour mediator, it should be preliminarily approved. Through this Joint Motion, the Parties request that the Court enter an Order (1) preliminarily approving the Settlement and conditionally certifying the Settlement Class for settlement purposes only; (2) granting Plaintiffs leave to file their proposed Second Amended Complaint (*see* Exh. 2); (3) approving and authorizing the mailing of their proposed Notice of Settlement, Class Member Settlement Information Sheet, and Election Not to Participate in Settlement (collectively, the "Class Notice Packet"); and (4) setting a hearing for final approval of the Settlement.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Hedge filed this putative class and collective action on December 19, 2018, in the United States District Court for the Southern District of Indiana. On February 14, 2019, Hedge filed the First Amended Complaint, adding Plaintiffs McClary and Turley. In this action, Plaintiffs alleged that Defendants violated Indiana law and the federal Fair Labor Standards Act ("FLSA") by, *inter alia*, not paying for compensable activities before and after shifts and during unpaid meal periods (including time spent donning and doffing personal protective equipment ("PPE") and traveling on TMMI's premises while subject to workplace rules); and not including certain bonus payments, shift differentials, and wellness credits in the calculation of employees' regular rate of pay for overtime compensation. (*See generally* Plaintiffs' First Amended

2

LEGAL_US_W # 100615010.2

Complaint, Docket No. 28.) Plaintiffs Hedge, McClary, and Turley sought to represent in a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), all opt-in plaintiffs employed by or assigned to work at TMMI; and Plaintiffs McClary and Turley sought to represent in a class action pursuant to Federal Rule of Civil Procedure 23 all similarly situated non-exempt persons employed by or assigned to work at TMMI. (*Id.*)

### III. TMMI's Defenses

TMMI denied, and continues to deny, all of Plaintiffs' material allegations. Specifically, TMMI contends that it complied with all applicable law at all times and that Plaintiffs' claims lack merit; that the action could not properly be maintained as a collective or class action; and that numerous putative class members' claims were barred by agreements to arbitrate their claims individually. In particular, TMMI contends that:

• Because putative class members are free to don and doff PPE wherever they wish, including at home, any time spent voluntarily donning and doffing PPE on TMMI's premises is not compensable as a matter of law. *See Bamonte v. City of Mesa*, 598 F.3d 1217 (9th Cir. 2010) (police officers' time spent donning and doffing clothing and gear at work was not compensable, in part because doing so was entirely optional and not mandated by law, rule, or regulation); Wage & Hour Adv. Mem. No. 2006-2, at 3 (May 31, 2006) ("[I]f employees have the option and ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the plant." Moreover, and in any event, the activities at issue are not compensable under the *de minimis* doctrine.

• TMMI's policy under which Class Members reported time in six-minute increments is a neutral and lawful rounding policy. *See* 29 C.F.R. § 785.48(b) (rounding lawful

3

if it does "not result, over a period of time, in failure to compensate the employees properly for all time they have actually worked").

• TMMI properly excluded discretionary bonuses, percentage-of-total-earnings bonuses, and payments for engaging in "wellness activities" (such as gym classes and smoking cessation and weight loss programs) from the regular rate of pay for overtime compensation. *See* 29 C.F.R. § 778.211 (discretionary bonus qualifies for exclusion from the regular rate); 29 C.F.R. §§ 778.210 (bonus based on percentage of total earnings qualifies for exclusion from the regular rate; Regular Rate Under the Fair Labor Standards Act, 18 Fed. Reg. 11888, 11896 (Mar. 29, 2019) (proposed rule expressly clarifying that payments associated with wellness programs are excludable from the regular rate because "[s]uch programs are not intended to constitute compensation for hours of employment.").

• Plaintiffs' claims could not properly be maintained as a class or collective action if they were litigated because, among other reasons, individual issues predominate with regard to Plaintiffs' claims and many putative class members signed agreements to individually arbitrate their claims. *See, e.g., Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 896 (6th Cir. 2019) *Déjà Vu Consulting*, 925 F.3d at 896 (finding wage and hour class action settlement reasonable in part based on "the risk that the Dancers would have [had] to face mandatory and binding arbitration in compliance with the arbitration clauses in their performance leases").

Furthermore, TMMI contends that any exposure, even if it did exist, would be entirely offset by premiums for daily overtime, holidays, and weekend work that TMMI paid to putative class members during the Covered Period. *See* 29 U.S.C. § 207(h) ("Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime compensation payable pursuant to this section."). During the

4

Covered Period, TMMI paid more than $18.5 million in offsetable premiums that it contends would wipe out any exposure that did exist.

## IV. INVESTIGATION AND MEDIATION

On March 7, 2019, the Parties moved to stay all proceedings and pending deadlines in the action to pursue early private mediation. On March 11, 2019, and July 30, 2019, the Court entered orders staying all proceedings pending mediation. On August 28, 2019, Plaintiffs and TMMI participated in a formal mediation in Atlanta, Georgia, conducted by Hunter R. Hughes III, a preeminent wage-and-hour mediator. (*See* Exhibit 3, Declaration of Robert J. Hunt ("Hunt Decl."), ¶ 12.) Prior to the mediation, the Parties engaged in significant informal discovery that enabled Plaintiffs to evaluate the potential strengths and weaknesses of the claims and defenses in this action. This included production by TMMI and review by Plaintiffs' counsel of employee handbooks and policies pertaining to timekeeping, overtime, personal protective equipment, and wage deductions; documents describing the incentive compensation paid and benefits provided by TMMI; and class-wide payroll data reflecting daily overtime and weekend and holiday premiums that TMMI contends are offsetable against any statutory overtime allegedly owed. (*Id.* at ¶ 13.) Because TMMI provided payroll data in an electronic format, Plaintiffs and their counsel were able to manipulate and analyze the data and prepare detailed analyses of the claims and potential exposure. In addition, Plaintiffs' counsel met with TMMI's counsel to tour TMMI's facility in Princeton, Indiana and observe the facility during pre-shift and post-shift periods and during unpaid meal periods. (*Id.* at ¶ 14.) At mediation, the Parties reached a settlement, which they memorialized in a Memorandum of Agreement and finalized over the following months. (*Id.* at ¶ 15.) On September 16, 2019, the Parties informed the Court that they were negotiating the agreement. On September 17, 2019, the Court vacated

all pending deadlines in the action and ordered the Parties to file proposed motions for settlement approval and conditional class certification by October 17, 2019.

### V. SUMMARY OF THE SETTLEMENT

#### A. Settlement Classes

The Settlement requires the certification of the following classes for the purpose of effectuating the Parties' agreement.

1. <u>Production Team Member Class</u>. The term "Production Team Member Class" means all Production Team Members employed by TMMI in any group other than Paint Shops at any time from December 19, 2015 through the date on which the Court grants preliminary approval of the Settlement.[1]

2. <u>Production Team Leader Class</u>. The term "Production Team Leader Class" means all Production Team Leaders employed by TMMI in any group other than Paint Shops at any time from December 19, 2015 through the date on which the Court grants preliminary approval of the Settlement.

3. <u>Variable Worker Class</u>. The term "Variable Worker Class" means all employees of Aerotek assigned to TMMI in any production group other than Paint Shops at any time from December 19, 2015 through the date on which the Court grants preliminary approval of the Settlement.

(*Id.*, § II.C.)

#### B. Settlement Amount

---

[1] The proposed Settlement Class excludes employees in Paint Shops because they are subject to different policies under which they receive extra compensation for pre-shift and post-shift

The Settlement obligates TMMI to pay a Total Settlement Amount of $1,555,000, from which all payments related to the Settlement shall be made, including payment of all Settlement Shares to Class Members who do not opt out; payment of the Class Representative Payments; payment of Class Counsel's attorneys' fees and expenses; the employer portion of payroll taxes applicable to the portion of Settlement Shares designated as wages; and the Settlement Administrator's fees and expenses. (*See* Exh.1, Settlement Agmt., §§ II.W, III.B.)

Each Class Member will receive a proportional share of the Net Settlement Amount (*i.e.*, the Total Settlement Amount after deductions are made for the Class Representative Payments, Class Counsel Fees and Expenses Payment, employer portion of payroll taxes for Settlement Shares; and Settlement Administrator's fees and expenses) based on the number of weeks that the Class Member worked in a position covered by the Settlement Agreement. (*Id.*, §§ II.R., III.C.) The Settlement provides that weeks worked by Class Members in Body Weld and Stamping shops will be weighted 1.5 times the value of other workweeks because Plaintiffs contended that Class Members in those shops typically donned and doffed more items of PPE during the pre- and post-shift periods at issue, and thus stood to recover more damages. (*See id.*, § III.C.1; Hunt Decl., ¶ 17.) It further provides that weeks worked by Production Team Leader Class Members will be weighted 1.11 times the value of workweeks for Production Team Member Class Members, to account for their higher hourly rates of pay during the Covered Period, and the weeks worked by employees of Aerotek, Inc. will be weighted 0.70 times the value of workweeks for Production Team Member Class Members, to account for their lower hourly rates of pay during the Covered Period. (*See id.*)

To the extent that the Court approves of lesser amounts than designated in the Settlement for the Class Representative Payments or Class Counsel Fees and Expenses Payment, the

7
LEGAL_US_W # 100615010.2

remainder will be retained in the Net Settlement Amount and distributed to Class Members who do not opt out of the Settlement. (*Id.*, §§ III.D.1., III.D.2.)

      **C.**      **Payments to Class Representatives and Class Counsel**

Plaintiffs and Class Counsel will apply to the Court for Class Representative Payments of $15,000 to each Plaintiff when the Parties file the joint motion for final approval of the Settlement. (Exh. 1, Settlement Agmt., § III.D.1.) Such payments are commonly referred to as "incentive" or "enhancement" awards. Because named plaintiffs are "an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (citation omitted); *see also Swift v. Direct Buy, Inc.*, No. 2:11-CV-401-TLS, 2013 WL 5770633, at *9 (N.D. Ind. Oct. 24, 2013) (approving incentive awards for each of 34 named plaintiffs where incentive awards were small percentage of overall recovery and named plaintiffs acted as representatives despite knowing litigation could be long and complex and that they would be subject to depositions and cross examination at trial). Plaintiffs provided documents and information to Class Counsel, reviewed documents, dedicated substantial time to this case, and faced the risk of a cost award against them. (Hunt Decl., ¶ 18.) Without the significant work done by Plaintiffs, the Class Members would not have benefitted from the Settlement. (*Id.*) Courts in this District and in the Northern District of Indiana have approved class representative payments equal to or more than the amount sought for the Plaintiffs in this case. (See *Trevino III, et al. v. Bremen Castings, Inc.,* Case No. 3:18-cv-00271 (N.D. Ind.), approving $15,000 representative payments to plaintiffs from a gross settlement amount of $315,000; and *Schneider, et al. v. Union Hospital Inc.,* Case No. 2:15-cv-00204-JMS-DKL (S.D. Ind.) approving $25,000 representative payments to plaintiffs from a gross settlement amount of $2,500,000)

In addition, when the Parties file the joint motion for final approval of the Settlement, Class Counsel will apply to the Court for a Class Counsel Fees and Expenses Payment of not more than $536,666, representing $516,666 for attorneys' fees (approximately one-third of the Total Settlement Amount) and a projected $20,000 for expenses. (Exh. 1, Settlement Agmt., § III.D.2.) "Under the 'common-fund' doctrine, class counsel is entitled to a reasonable fee drawn from the commonly held fund created by a settlement for the benefit of the class." *Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 115CV02062TWPMPB, 2019 WL 4193376, at *2 (S.D. Ind. Sept. 4, 2019) (citing *Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980)). The primary benefit that this Settlement provides to the Class Members is the creation of a gross settlement pool from which the Class Members will receive compensation for the overtime claims raised in the lawsuit. The percentage requested in attorneys' fees—one-third (33.33%) of the common fund—is reasonable and has routinely been approved by the courts in the Seventh Circuit in complex areas of law. *See id.* at *3.

**D.     Release of Claims**

In consideration for their awarded Settlement Shares, all Class Members (other than those Class Members who timely and validly elect not to participate in the Settlement) release the following claims:

> [A]ny and all claims, rights, demands, liabilities and causes of action against the Released Parties (including Aerotek, Inc., to the extent the Class Member was placed on assignment at TMMI while employed by Aerotek, Inc.) of every nature and description, whether known or unknown, arising at any time from December 19, 2015 through the date upon which the Settlement Administrator mails notice of the Settlement, that arise out of or relate to the allegations in the Action, including but not limited to the allegations that the Released Parties failed to pay overtime wages, accurately calculate the regular rate of pay for overtime compensation, pay for all time worked, or provide required meal periods; or that the Released Parties made unlawful deductions from wages. The released claims include without limitation all such claims that arise under the Indiana Wage Payment Statute, Ind. Code § 22-2-5; the Indiana Wage Claims Statute, Ind. Code

9

§ 22-2-9; the Indiana Wage Assignment Act, Ind. Code § 22-2-6-2; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.; contract law; any applicable Indiana Department of Labor orders; and any similar federal, state, municipal or local laws; and include any and all claims for wages, statutory or civil penalties, liquidated damages, interest, injunctive or other relief, and attorneys' fees and costs (the "Class Members' Released Claims").

(Exh. 1, Settlement Agmt., § III.G.2.) In addition, by cashing the checks sent to them as part of the Settlement, Class Members will consent to join the collective action pursuant to Section 16(b) of the FLSA. (*Id.*, § III.F.11.)

### E. Fees and Expenses of Settlement Administration

The Parties seek approval of Rust Consulting, Inc., as the Settlement Administrator (the "Settlement Administrator"). (Exh. 1 Settlement Agmt. § II.T) The Settlement Administrator's fees and expenses shall be paid from the Total Settlement Amount. The Settlement Administrator will deliver Class Notice Packets via U.S. First Class mail; receive and process objections and opt-outs, if any; issue settlement checks, and handle Settlement-related administrative work, such as tax reporting. The Settlement Administrator's fees and costs are projected to be $42,526.00.

### IV. ARGUMENT

For purposes of Settlement, the Parties agree that the requirements for certification of a settlement class have been met.[2] The Settlement Agreement was negotiated at arm's length, and the terms are favorable to all class members when compared with the potential benefits and risks of further litigation. Therefore, the Parties request that the Court preliminarily approve the Settlement and conditionally certify the Settlement Class; grant Plaintiffs leave to file their proposed Second Amended Complaint; approve and authorize the mailing of the proposed Class Notice Packet; and set a hearing for final approval of the Settlement.

---

[2] Defendants reserve all rights to contest collective and class certification in the event that the Settlement Agreement is not consummated.

## A. The Court Should Preliminarily Approve the Settlement Agreement.

When parties seek preliminary approval of a class action settlement agreement, the court must decide "whether the proposed settlement is 'within the range of possible approval.'" *Chapman v. Bowman, Heintz, Boscia & Vician, P.C.*, No. 2:15-CV-120 JD, 2015 WL 9478548, at *7 (N.D. Ind. Dec. 29, 2015) (citation omitted). The Settlement reached in this case is solidly within the "range of possible approval."

Under FED. R. CIV. P. 23(e)(2), the Court may approve a class action settlement if "it is fair, reasonable, and adequate." As one district court within the Seventh Circuit recently articulated:

> In assessing a settlement's fairness, "relevant factors include: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) [the] stage of the proceedings and the amount of discovery completed."

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, MDL No. 2492, 2016 WL 305380, at *6 (N.D. Ill. Jan. 26, 2016) (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)). Federal courts naturally favor the settlement of class action litigation. *See EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-889 (7th Cir. 1985) (noting "the general policy favoring voluntary settlements of class action disputes") (citations omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.") (citations omitted); *see also* WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 13.1 (5th ed. Supp. 2015) (noting that there is "a 'strong judicial policy in favor of class action settlement'"); *id.* at § 13.44 ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials

11

and appeals. Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation.").

In the present case, the Settlement Agreement meets the fairness requirements for multiple reasons. First, in the months before prior to attending mediation and entering into the Settlement, the Parties engaged in significant exchange of documents and information, including data pertaining to all non-exempt employees of TMMI (as opposed to a sample), and engaged in numerous discussions regarding the merits of the claims and defenses. This enabled the Parties to determine the scope of potential damages and to assess the strengths and weaknesses of their respective positions. *See Chapman*, 2015 WL 9478548, at *7 (in granting preliminary approval of settlement, noting that "[t]he litigation has been pending for six months, during which time, the parties were able to assess the strengths and weaknesses of their respective positions.").

Plaintiffs believe the strongest claims made in this class and collective action matter were based on allegations that Defendants did not accurately track and compensate Class Members for all hours worked. (Hunt Decl., ¶ 19) Because these claims relate to "off-the-clock" work, Plaintiffs were required to estimate the amount of unpaid hours worked and resulting wages owed. After investigation, Plaintiffs' counsel estimates that Class Members potentially worked 20 minutes per workweek "off-the-clock". Given the average hourly rates of Class Members and approximate number of workweeks in the two-year statute of limitations period, this results in a best possible recovery of approximately $4,957,000 in unpaid overtime wages had this case proceeded through litigation. To establish a three-year statute of limitations, Plaintiffs would not only have to be successful in proving their FLSA claims, but also be successful in proving Defendants willfully violated the FLSA. Plaintiffs and Class Members would also be entitled to

liquidated damages equal to the amount of their unpaid overtime wages in the event that Defendants failed to establish they acted in good faith. The Settlement reached in this case is approximately 31% of the estimated amount of unpaid wages owed to Plaintiffs and Class Members. (*Id.*)

Class counsel has achieved an excellent result for the Class Members, particularly in light of the risks and uncertainties associated with continued litigation. TMMI has asserted various legal and factual defenses, including $18,500,000 in offsets against the Class's potential recovery, the Portal to Portal Act of 1947, *de minimis* defenses, arbitration, as well as challenges to certifying and maintaining FLSA collective and Rule 23 classes. If this case continued, Plaintiffs would risk obtaining no recovery for the Class Members. (Hunt Decl., ¶ 20)

Second, "[c]ourts have approved settlements even though, unlike here, the benefits amounted to only a small percentage of the potential recovery." *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *5 (N.D. Ill. Oct. 10, 1995) (citations omitted); *see also Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (approving settlement of 20% of maximum possible recovery and noting courts have approved settlements amounting to 15% and 17% of maximum possible recovery) (citations omitted); *Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 WL 2745890, at *5 (E.D. Pa. Dec. 1, 2004) (finding proposed settlement amount of 46% of maximum possible recovery to be reasonable); *In re Newbridge Networks Sec. Litig.*, No. Civ. A. 94-1678-LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 28, 1998) (agreement securing between six and twelve percent of potential trial recovery "seems to be within the targeted range of reasonableness").

Third, all involved would benefit from the Settlement as it provides a means of avoiding the reality of protracted and uncertain litigation on the issues involved in this case. Preliminary

approval of a settlement is an appropriate means of avoiding these uncertainties, especially where, as here, Defendants deny liability and the Parties disagree about the merits of the case. *See Chapman*, 2015 WL 9478548, at *7-8.

Finally, adding to the reasonableness of the Settlement, "class members will obtain these benefits much more quickly than had the parties not settled," and "even if the case reached trial, the class members would not receive benefits for many years, if they received any at all." *Id.* at *7 (quoting *Swift v. DirectBuy, Inc.*, Nos. 2:11-cv-401, 2:11-cv-415, 2:11-cv-417, 2:12-cv-45, 2013 WL 5770633, at *5 (N.D. Ind. Oct. 24, 2013)).

As such, the Settlement here is fair, reasonable and adequate, and preliminary approval is warranted.

### B. The Proposed Class Notice Complies with Federal Rule of Civil Procedure 23 and Is Constitutionally Sound.

#### a. Rule 23.

The class notice must clearly and concisely state the following information in plain, easily understood language:

    (i)    the nature of the action;

    (ii)    the definition of the class certified;

    (iii)    the class claims, issues, or defenses;

    (iv)    that a class member may enter an appearance through an attorney if the member so desires;

    (v)    that the court will exclude from the class any member who requests exclusion;

    (vi)    the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B); *see also* FED. R. CIV. P. 23(e)(1) (in the context of a proposed settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal").

The proposed Class Notice contains the specific information required by Rule 23(c)(2)(B). (*See* Exh. 1, Settlement Agreement, Exh. A (Class Notice).) The proposed Class Notice is also accurate, informative and easy to understand. The Class Notice is written in plain language and provides clear and accurate information as to the nature and principal terms of the Settlement Agreement, including the monetary and other relief the Settlement will provide Class Members; an explanation of the method of allocating Settlement Amount monies to Class Members; the scope of releases; the Settlement Administrator's estimated expenses; the procedures and deadlines for opting out and submitting objections; the consequences of taking or foregoing the various options available to Class Members; and the date, time and place of the Final Approval hearing. Further, pursuant to Rule 23(h), the Notice of Settlement also sets forth the maximum amount of attorneys' fees and costs that may be sought by Class Counsel. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See, e.g.*, 4 NEWBERG ON CLASS ACTIONS (Fourth) §§ 8.21, 8.39; *Manual Fourth* §§ 21.311-21.312.

Courts have approved class notices even when they provided only general information about a settlement. *See McCue v. MB Fin., Inc.*, No. 1:15-cv-00988, 2015 WL 1020348, at *4 (N.D. Ill. Mar. 6, 2015) (finding proposed class notice "appropriate because it describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing") (citation

omitted); *see also In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (noting that "[n]ormally, settlement notices need only describe the terms of the settlement generally") (citations omitted). Thus, the proposed Class Notice not only complies with the requirements of Rule 23(c)(2)(B) and Rule 23(e)(1), but exceeds the minimum requirements for obtaining preliminary approval.

### b. Due Process.

Due process requires the class notice to be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted); *see also Chapman*, 2015 WL 9478548, at *9 (N.D. Ind. Dec. 29, 2015) (proposed class notice constituted due and sufficient notice where settlement required class administrator to mail notice to class members and attempt to locate class members whose notices were returned as undeliverable and update addresses as needed using standard methodology). Due process, however, "does not require the notice to set forth every ground on which class members might object to the settlement." *Mullane*, 339 U.S. at 314 (internal quotation marks and citation omitted). Rather, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.* (alteration in original, internal quotation marks and citation omitted).

The proposed Class Notice satisfies the requirements of due process. The Parties propose that the Settlement Administrator send the Notice of Settlement, Class Member Settlement Information Sheet and Election Not to Participate in Settlement form to each Class Member by U.S. First Class mail. (*See* Exh. 1, Settlement Agmt., § III.F.2.) The Settlement Administrator

16

LEGAL_US_W # 100615010.2

will endeavor to ensure that each Class Member receives his or her Class Notice Packet by taking all reasonable steps to trace the addresses of Settlement Class Members. (*See id.*) Upon return of any Class Notice Packet, the Settlement Administrator will promptly search for the Class Member's address and, if found, will re-mail the Class Notice Packet to the Class Member. (*See id.*) Furthermore, Class Members may contact the Settlement Administrator to obtain replacement copies of the Notice of Settlement, Class Member Settlement Information Sheet, and Election Not to Participate in Settlement form. (*See id.*, Exh A (Class Notice).)

Class Members will have forty-five (45) days from the date of mailing of the Class Notice Packets to review, opt-out of, or object to the Settlement. (*Id.*, § III.F.3.b.) Class Counsel's information is provided in the Class Notice Packet so Class Members can ask any questions relating to the Settlement. (*See id.*, Exh. A (Class Notice).)

This notice plan is consistent with class certification notices approved by numerous courts, and is, under the circumstances of this case, the best notice practicable. *See, e.g.*, *Wright v. Linkus Enters., Inc.*, No. 2:07-cv-01347-MCE, 2009 WL 2365436, at *7-8 (E.D. Cal. July 29, 2009) (holding notice involving similar mail procedures met both Rule 23(e) requirement that "proposed settlement is fundamentally fair, adequate, and reasonable" and "Rule 23(c)(2)(B) requirement that the Court direct 'best notice that is practicable under the circumstances'") (quoting Fed. R. Civ. P. 23(c)(2)(B), (e)); *Davis v. Abercrombie & Fitch Co.*, No. 08-CV-01859(PKC)(AJP), 2009 WL 1542552, at *1-4 (S.D.N.Y. June 2, 2009) (approving similar method of issuing class notice); *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13, 2009) (finding similar method to be "best notice practicable"); *Adams v. Inter-Con Security Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466,

at *3-4 (N.D. Cal. Oct. 30, 2007) (notice using similar method "satisfies the notice requirements of Rule 23(e), and . . . all other legal and due process requirements").

### V. CONCLUSION

For the reasons set forth above, the Parties jointly request that the Court preliminarily approve the Settlement and conditionally certify the Settlement Class; grant Plaintiffs leave to file their proposed Second Amended Complaint; approve and authorize the mailing of the proposed Class Notice Packet; and set a hearing for final approval of the Settlement.

Dated: October 31, 2019

Respectfully submitted,

| | |
|---|---|
| */s/ Robert J. Hunt* <br> Robert J. Hunt (#30686-49) <br> THE LAW OFFICE OF ROBERT J. HUNT, LLC <br> 1905 South New Market Street, Suite 220 <br> Carmel, Indiana 46032 <br> Telephone: (317) 743-0614 <br> Facsimile: (317) 743-0615 <br> rob@indianawagelaw.com <br><br> *Attorney for Plaintiffs* | */s/ John Borkowski* <br> John Borkowski (#2598-49) <br> HUSCH BLACKWELL LLP <br> 1251 North Eddy Street, Suite 200 <br> South Bend, Indiana 46617 <br> Telephone: (574) 239-7010 <br> Facsimile: (574) 287-3116 <br> john.borkowski@huschblackwell.com <br><br> *Attorney for Defendant* <br> *Aerotek, Inc.* <br><br> */s/ Zachary P. Hutton* <br> Zachary P. Hutton (pro hac vice) <br> Zina Deldar (pro hac vice) <br> Anna M. Skaggs (pro hac vice) <br> PAUL HASTINGS LLP <br> 101 California St., 48th Floor <br> San Francisco, California 94111 <br> Telephone: (415) 856-7000 <br> Facsimile: (415) 856-7100 <br> zachhutton@paulhastings.com <br> zinadeldar@paulhastings.com <br> annaskaggs@paulhastings.com <br><br> *Attorneys for Defendant* <br> *Toyota Motor Manufacturing, Indiana, Inc.* |