## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## EVANSVILLE DIVISION

| | |
|---|---|
| DENIA HEDGE, MELISSA McCLARY, and DUSTIN TURLEY, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TOYOTA MOTOR MANUFACTURING, INDIANA, INC., and AEROTEK, INC.,<br><br>Defendants. | )<br>)<br>)<br>) **CLASS ACTION COMPLAINT**<br>)<br>)<br>) **FLSA COLLECTIVE ACTION**<br>) **COMPLAINT UNDER**<br>) **29 USC § 216(b)**<br>)<br>) CASE NO. 3:18-CV-00246-RLY-MPB<br>)<br>)<br>)<br>)<br>)<br>) |

## ***JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION AND FLSA COLLECTIVE ACTION SETTLEMENT***

### *I.* *INTRODUCTION*

This joint motion seeks final approval of the class and collective action settlement of $1,555,000.00 (the "Settlement") between Plaintiffs Denia Hedge ("Hedge"), Melissa McClary ("McClary"), and Dustin Turley ("Turley"), individually and on behalf of all class members (hereinafter collectively referred to as "Plaintiffs" or "Class Members") and Defendants Toyota Motor Manufacturing Indiana, Inc. ("TMMI") and Aerotek, Inc. ("Aerotek") (collectively, "Defendants").

The Settlement resolves wage and hour claims brought against Defendants on behalf of a Settlement Class consisting of the three subclasses proposed in Plaintiffs' Second Amended Complaint. Specifically, the Settlement Class includes all non-exempt persons employed by TMMI, or employed by Aerotek, Inc., and assigned to work at TMMI, in any group other than

Paint Shops from December 19, 2015 through the date on which the Court granted preliminary approval (the "Covered Period"). TMMI denied and continues to deny any liability to Plaintiffs or the proposed Settlement Class and maintains that it has complied and continues to comply with all applicable laws. However, TMMI agreed to settle the Action in accordance with the terms of the Settlement Agreement to avoid the costs of litigation. This early resolution avoids the substantial time and costs of litigation, provides finality and certainty as to disputed claims, and is the result of substantial arm's-length negotiations.

Of the 8,049 Class Members, only 260 opted out of the Settlement, which equates to 3.23% of the Settlement class, and no member of the Settlement class has objected to the Settlement. [See Ex. 3, Settlement Administrator's Declaration, ¶¶ 7, 9, 13 and 14] The remaining 96.77% of Class Members will be eligible to receive payments under the Settlement should the Court grant final approval and, as described more fully below, the Settlement is fair, reasonable, and adequate. For all these reasons, the Parties respectfully request the Court grant their Joint Motion for Final Approval of Class Action and FLSA Collective Action Settlement so that funds may be distributed to workers awaiting payments.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Hedge filed this putative class and collective action on December 19, 2018, in the United States District Court for the Southern District of Indiana. On February 14, 2019, Hedge filed the First Amended Complaint, adding Plaintiffs McClary and Turley. In this action, Plaintiffs alleged that Defendants violated Indiana law and the federal Fair Labor Standards Act ("FLSA") by, *inter alia*, not paying for compensable activities before and after shifts and during unpaid meal periods (including time spent donning and doffing personal protective equipment ("PPE") and traveling on TMMI's premises while subject to workplace rules); and not including

certain bonus payments, shift differentials, and wellness credits in the calculation of employees'

regular rate of pay for overtime compensation. (*See generally* Plaintiffs' First Amended

Complaint, Docket No. 28.) Plaintiffs Hedge, McClary, and Turley sought to represent in a

collective action pursuant to the FLSA, 29 U.S.C. § 216(b), all opt-in plaintiffs employed by or

assigned to work at TMMI; and Plaintiffs McClary and Turley sought to represent in a class

action pursuant to Federal Rule of Civil Procedure 23 all similarly situated non-exempt persons

employed by or assigned by Aerotek, Inc., to work at TMMI. (*Id.*)

TMMI denied, and continues to deny, all of Plaintiffs' material allegations.

Specifically, TMMI contends that it complied with all applicable law at all times and that

Plaintiffs' claims lack merit; that the action could not properly be maintained as a collective or

class action; and that numerous putative class members' claims were barred by agreements to

arbitrate their claims individually.

Furthermore, TMMI contends that any exposure, even if it did exist, would be

entirely offset by premiums for daily overtime, holidays, and weekend work that TMMI paid to

putative class members during the Covered Period. *See* 29 U.S.C. § 207(h) ("Extra

compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be

creditable toward overtime compensation payable pursuant to this section."). During the

Covered Period, TMMI paid more than $18.5 million in offsetable premiums that it contends

would wipe out any exposure that did exist, if any.

On March 7, 2019, the Parties moved to stay all proceedings and pending deadlines in the

action to pursue early private mediation. On March 11, 2019, and July 30, 2019, the Court

entered orders staying all proceedings pending mediation. On August 28, 2019, Plaintiffs and

TMMI participated in a formal mediation in Atlanta, Georgia, conducted by Hunter R.

Hughes III, a preeminent wage-and-hour mediator. (*See* Exhibit 2, Declaration of Robert J. Hunt ("Hunt Decl."), ¶ 14.) Prior to the mediation, the Parties engaged in significant informal discovery that enabled Plaintiffs to evaluate the potential strengths and weaknesses of the claims and defenses in this action. This included production by TMMI and review by Plaintiffs' counsel of employee handbooks and policies pertaining to timekeeping, overtime, personal protective equipment, and wage deductions; documents describing the incentive compensation paid and benefits provided by TMMI; and class-wide payroll data reflecting daily overtime and weekend and holiday premiums that TMMI contends are offsetable against any statutory overtime allegedly owed. (*Id.* at ¶ 15.) Because TMMI provided payroll data in an electronic format, Plaintiffs and their counsel were able to manipulate and analyze the data and prepare detailed analyses of the claims and potential exposure. In addition, Plaintiffs' counsel met with TMMI's counsel to tour TMMI's facility in Princeton, Indiana and observe the facility during pre-shift and post-shift periods and during unpaid meal periods. (*Id.* at ¶ 16.)

At mediation, the Parties reached a settlement, which they memorialized in a Memorandum of Agreement and finalized over the following months. (*Id.* at ¶ 17.) On October 31, 2019, the Parties filed their Joint Motion for Preliminary Approval of Class Action and FLSA Collective Action Settlement. [Docket No. 51] On February 21, 2020, the Court entered its Order granting the Joint Motion for Preliminary Approval of Class Action and FLSA Collective Action Settlement and setting a hearing on final approval for June 19, 2020. (Docket No. 54) TMMI has discharged their obligations under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to provide notice to appropriate federal and state officials.

As of this filing, of the 8,049 Class Members, only 260 opted out of the Settlement and no Class Member has objected to the Settlement. [See Ex. 3, Settlement Administrator's Declaration, ¶¶ 7, 9, 13 and 14]

## V.      SUMMARY OF THE SETTLEMENT

### A.      Settlement Classes.

The Settlement requires the certification of the following classes for the purpose of effectuating the Parties' agreement.

1.      <u>Production Team Member Class</u>.  The term "Production Team Member Class" means all Production Team Members employed by TMMI in any group other than Paint Shops at any time from December 19, 2015 through the date on which the Court grants preliminary approval of the Settlement.[1]

2.      <u>Production Team Leader Class</u>.  The term "Production Team Leader Class" means all Production Team Leaders employed by TMMI in any group other than Paint Shops at any time from December 19, 2015 through the date on which the Court grants preliminary approval of the Settlement.

3.      <u>Variable Worker Class</u>.  The term "Variable Worker Class" means all employees of Aerotek assigned to TMMI in any production group other than Paint Shops at any time from December 19, 2015 through the date on which the Court grants preliminary approval of the Settlement.

(*Id.*, § II.C.)

---

[1] The proposed Settlement Class excludes employees in Paint Shops because they are subject to different policies under which they receive extra compensation for pre-shift and post-shift activities.

**B.      Settlement Amount.**

The Settlement obligates TMMI to pay a Total Settlement Amount of $1,555,000, from which all payments related to the Settlement shall be made, including payment of all Settlement Shares to Class Members who do not opt out; payment of the Class Representative Payments; payment of Class Counsel's attorneys' fees and expenses; the employer portion of payroll taxes applicable to the portion of Settlement Shares designated as wages; and the Settlement Administrator's fees and expenses. (*See* Exh.1, Settlement Agmt., §§ II.W, III.B.)

Each Class Member will receive a proportional share of the Net Settlement Amount (*i.e.*, the Total Settlement Amount after deductions are made for the Class Representative Payments, Class Counsel Fees and Expenses Payment, employer portion of payroll taxes for Settlement Shares; and Settlement Administrator's fees and expenses) based on the number of weeks that the Class Member worked in a position covered by the Settlement Agreement. (*Id.*, §§ II.R., III.C.)  The Settlement provides that weeks worked by Class Members in Body Weld and Stamping shops will be weighted 1.5 times the value of other workweeks because Plaintiffs contended that Class Members in those shops typically donned and doffed more items of PPE during the pre- and post-shift periods at issue, and thus stood to recover more damages. (*See id.*, § III.C.1; Hunt Decl., ¶ 17.)  It further provides that weeks worked by Production Team Leader Class Members will be weighted 1.11 times the value of workweeks for Production Team Member Class Members, to account for their higher hourly rates of pay during the Covered Period, and the weeks worked by employees of Aerotek, Inc. will be weighted 0.70 times the value of workweeks for Production Team Member Class Members, to account for their lower hourly rates of pay during the Covered Period. (*See id.*)  To the extent that the Court approves of lesser amounts than designated in the Settlement for the Class Representative Payments or Class

Counsel Fees and Expenses Payment, the remainder will be retained in the Net Settlement Amount and distributed to Class Members who do not opt out of the Settlement. (*Id.*, §§ III.D.1., III.D.2.)

C. **Payments to Class Representatives and Class Counsel.**

Plaintiffs and Class Counsel will apply to the Court for Class Representative Payments of $15,000 to each Plaintiff.[2] (Exh. 1, Settlement Agmt., § III.D.1.) Such payments are commonly referred to as "incentive" or "enhancement" awards. Because named plaintiffs are "an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (citation omitted); *see also Swift v. Direct Buy, Inc.*, No. 2:11-CV-401-TLS, 2013 WL 5770633, at *9 (N.D. Ind. Oct. 24, 2013) (approving incentive awards for each of 34 named plaintiffs where incentive awards were small percentage of overall recovery and named plaintiffs acted as representatives despite knowing litigation could be long and complex and that they would be subject to depositions and cross examination at trial). Plaintiffs provided documents and information to Class Counsel, reviewed documents, dedicated substantial time to this case, and faced the risk of a cost award against them. (Hunt Decl., ¶ 18.) Without the significant work done by Plaintiffs, the Class Members would not have benefitted from the Settlement. (*Id.*) Courts in this District and in the Northern District of Indiana have approved class representative payments equal to or more than the amount sought for the Plaintiffs in this case. (See Order, *Trevino III, et al. v. Bremen Castings, Inc.*, Case No. 3:18-cv-00271 (N.D. Ind. Oct. 15, 2019) (Docket No. 55), approving $15,000 representative payments to plaintiffs from a gross

---

[2] TMMI takes no position regarding the Class Representative Payments and fee award, but does not oppose the request for these payments, and joins the request that the Court grant final approval of the Settlement.

settlement amount of $315,000; and Order, *Schneider, et al. v. Union Hospital Inc.*, Case No. 2:15-cv-00204-JMS-DKL (S.D. Ind. May 9, 2017) (Docket No. 31), approving $25,000 representative payments to plaintiffs from a gross settlement amount of $2,500,000).

In addition, Class Counsel will apply to the Court for a Class Counsel Fees and Expenses Payment of not more than $536,666, representing $516,666 for attorneys' fees (approximately one-third of the Total Settlement Amount) and expenses not to exceed $20,000. (Exh. 1, Settlement Agmt., § III.D.2.) "Under the 'common-fund' doctrine, class counsel is entitled to a reasonable fee drawn from the commonly held fund created by a settlement for the benefit of the class." *Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 115CV02062TWPMPB, 2019 WL 4193376, at *2 (S.D. Ind. Sept. 4, 2019) (citing *Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980)). The primary benefit that this Settlement provides to the Class Members is the creation of a gross settlement pool from which the Class Members will receive compensation for the overtime claims raised in the lawsuit. The percentage requested in attorneys' fees—one-third (33.33%) of the common fund—is reasonable and has routinely been approved by the courts in the Seventh Circuit in complex areas of law. *See id.* at *3.

### D. Fees and Expenses of the Settlement Administrator.

The Settlement Administrator, Rust Consulting, Inc.'s fees and expenses shall be paid from the Total Settlement Amount. The Settlement Administrator distributed the Class Notice Packets via both U.S. First Class mail; set up a toll-free telephone number for Class Members to call with questions regarding the Settlement; received and processed opt-outs; and will issue settlement checks and handle Settlement-related administrative work, such as tax reporting. The Settlement Administrator's fees and costs are projected to be $45,000.00 (Ex. 3, ¶ 16).

**E.     Release of Claims.**

In consideration for their awarded Settlement Shares, all Class Members (other than those

Class Members who timely and validly elect not to participate in the Settlement) release the

following claims:

> [A]ny and all claims, rights, demands, liabilities and causes of action against the
> Released Parties (including Aerotek, Inc., to the extent the Class Member was
> placed on assignment at TMMI while employed by Aerotek, Inc.) of every nature
> and description, whether known or unknown, arising at any time from December
> 19, 2015 through the date upon which the Settlement Administrator mails notice
> of the Settlement, that arise out of or relate to the allegations in the Action,
> including but not limited to the allegations that the Released Parties failed to pay
> overtime wages, accurately calculate the regular rate of pay for overtime
> compensation, pay for all time worked, or provide required meal periods; or that
> the Released Parties made unlawful deductions from wages.  The released claims
> include without limitation all such claims that arise under the Indiana Wage
> Payment Statute, Ind. Code § 22-2-5; the Indiana Wage Claims Statute, Ind. Code
> § 22-2-9; the Indiana Wage Assignment Act, Ind. Code § 22-2-6-2; the Fair Labor
> Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.; contract law; any applicable
> Indiana Department of Labor orders; and any similar federal, state, municipal or
> local laws; and include any and all claims for wages, statutory or civil penalties,
> liquidated damages, interest, injunctive or other relief, and attorneys' fees and
> costs (the "Class Members' Released Claims").

(Exh. 1, Settlement Agmt., § III.G.2.)  In addition, by cashing the checks sent to them as part of

the Settlement, Class Members will consent to join the collective action pursuant to Section

16(b) of the FLSA.  (*Id.*, § III.F.11.)

**F.     Settlement Administration, Opting Out and Objections.**

Subject to Court approval, the Settlement has been or will be administered by the

Settlement Administrator in accordance with the following deadlines:

1.     TMMI's production to Settlement Administrator of class-wide data: March 26,
       2020;

**2.**     Deadline for the Settlement Administrator to send Class Notice Packets to the
       Class Members via U.S. First Class Mail: April 10, 2020;

3. Deadline for Class Members to postmark Election Not to Participate in Settlement forms ("Opt-Out Forms") and objections: May 26, 2020;

4. Deadline for Settlement Administrator to provide the Parties with a complete and accurate list of objections and Opt-Out forms received: June 5, 2020;

5. Deadline for Settlement Administrator to provide TMMI with wire transfer information: Within 3 days after the Settlement becomes Final;

6. Deadline for TMMI to Transfer the Total Settlement Amount to the Settlement Administrator via wire transfer: Within 20 days after the Settlement Administrator provides TMMI with wire transfer information; and

7. Deadline for Settlement Administrator to mail settlement payments to Class Members: Within 10 days after the Settlement Administrator's receipt of settlement funds from TMMI.

To date, the Parties have received 260 Opt-Outs and no objections [See Ex. 3, Settlement Administrator's Declaration, ¶¶ 13 - 14], suggesting that 96.77% of Class Members would like the settlement to proceed.

## III. *THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT*

For purposes of Settlement, the Parties agree that the requirements for certification of a settlement class have been met.[3] The Settlement Agreement was negotiated at arm's length, and the terms are favorable to all class members when compared with the potential benefits and risks of further litigation. Therefore, the Parties request that the Court grant final approval of the Settlement.

### A. **The Settlement Is Fair, Reasonable and Adequate, and Final Approval Is Warranted.**

The Settlement was negotiated at arms' length, and the terms are favorable to all class members when compared with the potential benefits and risks of further litigation. See *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010). For FLSA

---

[3] Defendants reserve all rights to contest collective and class certification in the event that the Settlement Agreement is not consummated.

purposes, the Court must consider "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching. *Id.* The following factors are to be considered:

> (1) [T]he complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation.

*Id.*

Under Federal Rule of Civil Procedure 23(e)(2), the Court may approve a class action settlement if "it is fair, reasonable, and adequate[.]" As one district court within the Seventh Circuit recently articulated:

> In assessing a settlement's fairness, "relevant factors include: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) [the] stage of the proceedings and the amount of discovery completed."

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, MDL No. 2492, 2016 WL 305380, at \*6 (N.D. Ill. Jan. 26, 2016) (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)). Federal courts naturally favor the settlement of class action litigation. *See EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-889 (7th Cir. 1985) (noting "the general policy favoring voluntary settlements of class action disputes") (citations omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.") (citations omitted); *see also* WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 13.1 (5th ed. Supp. 2015) (noting that there is "a 'strong judicial policy in favor of

class action settlement'"); *id.* at § 13.44 ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals. Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation.").

In the present case, the Settlement Agreement meets the fairness requirements for multiple reasons. First, in the months before attending mediation and entering into the Settlement, the Parties engaged in significant exchange of documents and information, including data pertaining to all non-exempt employees of TMMI (as opposed to a sample), and engaged in numerous discussions regarding the merits of the claims and defenses. This enabled the Parties to determine the scope of potential damages and to assess the strengths and weaknesses of their respective positions. *See Chapman*, 2015 WL 9478548, at *7 (in granting preliminary approval of settlement, noting that "[t]he litigation has been pending for six months, during which time, the parties were able to assess the strengths and weaknesses of their respective positions.").

Plaintiffs believe the strongest claims made in this class and collective action matter were based on allegations that Defendants did not accurately track and compensate Class Members for all hours worked. Because these claims relate to "off-the-clock" work, Plaintiffs were required to estimate the amount of unpaid hours worked and resulting wages owed. After investigation, Plaintiffs' counsel estimates that Class Members potentially worked 20 minutes per workweek "off-the-clock." Given the average hourly rates of Class Members and approximate number of workweeks in the two-year statute of limitations period, this results in a best possible recovery of approximately $4,957,000 in unpaid overtime wages had this case proceeded through litigation. To establish a three-year statute of limitations, Plaintiffs would not only have to be successful in

proving their FLSA claims, but also be successful in proving Defendants willfully violated the FLSA. Plaintiffs and Class Members would also be entitled to liquidated damages equal to the amount of their unpaid overtime wages in the event that Defendants failed to establish they acted in good faith. The Settlement reached in this case is approximately 31% of the estimated amount of unpaid wages allegedly owed to Plaintiffs and Class Members. (*Id.*)

Class counsel has achieved an excellent result for the Class Members, particularly in light of the risks and uncertainties associated with continued litigation. TMMI has asserted various legal and factual defenses, including $18,500,000 in offsets against the Class's potential recovery, the Portal-to-Portal Act of 1947, *de minimis* defenses, arbitration, as well as challenges to certifying and maintaining FLSA collective and Rule 23 classes. If this case continued, Plaintiffs would risk obtaining no recovery for the Class Members.

Second, "[c]ourts have approved settlements even though, unlike here, the benefits amounted to only a small percentage of the potential recovery." *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *5 (N.D. Ill. Oct. 10, 1995) (citations omitted); *see also Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (approving settlement of 20% of maximum possible recovery and noting courts have approved settlements amounting to 15% and 17% of maximum possible recovery) (citations omitted); *Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 WL 2745890, at *5 (E.D. Pa. Dec. 1, 2004) (finding proposed settlement amount of 46% of maximum possible recovery to be reasonable); *In re Newbridge Networks Sec. Litig.*, No. Civ. A. 94-1678-LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 28, 1998) (agreement securing between six and twelve percent of potential trial recovery "seems to be within the targeted range of reasonableness").

Third, all involved would benefit from the Settlement as it provides a means of avoiding the reality of protracted and uncertain litigation on the issues involved in this case. Preliminary approval of a settlement is an appropriate means of avoiding these uncertainties, especially where, as here, Defendants deny liability and the Parties disagree about the merits of the case. *See Chapman*, 2015 WL 9478548, at *7-8.

Finally, adding to the reasonableness of the Settlement, "class members will obtain these benefits much more quickly than had the parties not settled," and "even if the case reached trial, the class members would not receive benefits for many years, if they received any at all." *Id.* at *7 (quoting *Swift v. DirectBuy, Inc.*, Nos. 2:11-cv-401, 2:11-cv-415, 2:11-cv-417, 2:12-cv-45, 2013 WL 5770633, at *5 (N.D. Ind. Oct. 24, 2013)).

Moreover, no one has objected to the Settlement and only 260 of the 8,049 Class Members have opted out of the Settlement. Accordingly, there has been no opposition to the settlement and the reaction of Class Members has been positive.

As such, the Settlement here is fair, reasonable and adequate, and final approval is warranted.

**B. The Service Awards to Lead Plaintiffs Are Reasonable and Warranted.**

"Service or incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Knox v. Jones Group*, 2017 WL 3834929 *2 (S.D. Ind. Aug. 31, 2017) (citations omitted). See also *Espenscheid v. DirecSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing the importance of incentive awards). "Accordingly, incentive awards are commonly awarded to those who serve the interests of the

class." *Knox*, 2017 WL 3834929, at *2, citing *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, *8 (E.D.N.Y. Nov. 20, 2012) (collecting cases). "In examining the reasonableness of the requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation." *Knox*, 2017 WL 3834929 at *2, citing *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727 *16 (N.D. Ill. Feb. 28, 2012).

This $1,555,000.00 class and collective action settlement would not have been possible without Plaintiffs Hedge, McClary and Turley. Ms. Hedge was the original lead plaintiff who was soon joined by Ms. McClary and Mr. Turley. All participated in gathering information, locating witnesses, participating in planning, informal discovery and, ultimately, making decisions regarding the settlement. The $15,000 service awards agreed to by the parties and preliminarily approved by the Court are well within the realm of reasonableness of similar service awards within our Circuit. (See Order, *Trevino III, et al. v. Bremen Castings, Inc.,* Case No. 3:18-cv-00271 (N.D. Ind. Oct. 15, 2019) (Docket No. 55), approving $15,000 representative payments to plaintiffs from a gross settlement amount of $315,000; Order, *Schneider, et al. v. Union Hospital Inc.*, Case No. 2:15-cv-00204-JMS-DKL (S.D. Ind. May 9, 2017) (Docket No. 31), approving $25,000 representative payments to plaintiffs from a gross settlement amount of $2,500,000; and Entry Approving Settlement Agreement, *Bridgewater and Van Ness II, et al. v. Jadcore, LLC*, Case No. 2:16-cv-00060-WTL-DLP (S.D. Ind. June 7, 2019) (Docket No. 138), approving $10,000.00 representative payments to plaintiffs from a gross settlement amount of $351,296.92.)

Finally, courts regularly approve incentive awards paid from the common fund. See

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015). Plaintiffs request final approval

of the service awards to the three Lead Plaintiffs.

## IV. CONCLUSION

For the reasons set forth above, the Parties jointly request that the Court grant Final

Approval of the Class and Collective Action Settlement Agreement, which was preliminarily

approved on February 21, 2020 (Docket No. 54), grant all requested attorneys' fees, costs

expenses and Lead Plaintiffs' service awards, and order that class funds be distributed to all

participating Class Members.

Dated: June 5, 2020

Respectfully submitted,

/s/ Robert J. Hunt_____
Robert J. Hunt (#30686-49)
Robert F. Hunt (#7889-84)
THE LAW OFFICE OF ROBERT J. HUNT, LLC
1905 South New Market Street, Suite 168
Carmel, Indiana 46032
Telephone: (317) 743-0614
Facsimile: (317) 743-0615
rob@indianawagelaw.com
rfh@indianawagelaw.com
*Attorney for Plaintiffs*

/s/ John Borkowski_____
John Borkowski (#2598-49)
HUSCH BLACKWELL LLP
1251 North Eddy Street, Suite 200
South Bend, Indiana 46617
Telephone: (574) 239-7010
Facsimile: (574) 287-3116
john.borkowski@huschblackwell.com

*Attorney for Defendant*
*Aerotek, Inc.*

/s/ Zachary P. Hutton_____
Zachary P. Hutton (pro hac vice)
Anna M. Skaggs (pro hac vice)
PAUL HASTINGS LLP
101 California St., 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
zachhutton@paulhastings.com
annaskaggs@paulhastings.com

*Attorneys for Defendant*
*Toyota Motor Manufacturing, Indiana, Inc.*